UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ESTATE OF AMILIANA SANCHEZ,

        Plaintiff,                            Case No. 1:20-cv-11685

v.                                        Honorable Thomas L. Ludington
                                             United States District Judge

JULIAN GUEVARA, at al.,

        Defendants.
_____/

**ORDER ADJOURNING SETTLEMENT APPROVAL HEARING AND DIRECTING
SUPPLEMENTAL BRIEFING AND OBJECTIONS**

The Parties in this above-captioned 42 U.S.C. § 1983 wrongful death case have reached a resolution and proposed a draft Settlement Agreement. After a brief background on the underlying facts and applicable state procedures, this Order adjourns the previously scheduled settlement approval hearing, directs the deceased's estate's personal representative to file supplemental briefing explaining his proposed proceed distribution, and directs the claimants to file objections to this distribution in advance of the adjourned settlement approval hearing.

I.

On June 24, 2016, Rudy Sanchez was driving his girlfriend—Lindsey Drake—and their four-month-old daughter—Amiliana Sanchez—home from a party. *See generally Est. of Sanchez v. City of Saginaw*, 678 F. Supp. 3d 888 (E.D. Mich. 2023). But Rudy was under the influence of alcohol and drugs and, after being stopped but later released by Saginaw Police Department officers, tragically crashed the car into a tree, killing Lindsey and baby Amiliana. *Id.*

On August 21, 2019, Saginaw County Probate Court Judge Patrick McGraw appointed Hugh LeFevre as the Personal Representative of Amiliana's estate. *See* ECF No. 1 at PageID.3; *In*

*re Amiliana Kay Sanchez*, No. 16-139284-DE (Mich. Prob. Ct. Saginaw Cnty. June 10, 2019). In June 2020, Amiliana's estate—through Personal Representative LeFevre—sued the City of Saginaw, the Saginaw Police Department, and five individual officers, alleging they deprived the deceased of federal constitutional due process through their deliberate indifference to the risk of harm posed by Rudy's intoxication. *See generally* ECF No. 1. Six months later, this Court dismissed all claims against the City of Saginaw and its Police Department. *See Est. of Drake v. City of Saginaw*, No. 20-CV-11684, 2020 WL 7122076, at *7–10 (E.D. Mich. Dec. 4, 2020). And Plaintiff later stipulated to dismiss one of the five officer Defendants. ECF No. 79.

In June 2023, this Court denied the remaining four officer Defendants' joint motion for summary judgment, concluding that "a jury must determine whether the officers were aware of [Rudy]'s intoxication and whether they were deliberately indifferent to the potential for harm." *Est. of Sanchez v. City of Saginaw*, 678 F. Supp. 3d 888 (E.D. Mich. 2023). The remaining officer Defendants appealed. ECF No. 86. While the appeal was pending, the Parties participated in the Sixth Circuit's Mediation Program and agreed to the terms of a Proposed Settlement Agreement, which, if approved, would resolve the above-captioned case. ECF No. 91 at PageID.2198. Accordingly, on October 9, 2024, the Sixth Circuit issued an order of stipulated dismissal, ECF No. 90, and on October 25, 2024, Personal Representative LeFevre filed a motion to approve the Proposed Settlement Agreement under the Michigan Wrongful Death Act. ECF No. 91.

## II.

Although federal constitutional law governs the *merits* of Plaintiff's underlying claims, the Michigan Wrongful Death Act, MICH. COMP. LAWS § 600.2922, governs the *resolution* of these claims, for two important reasons.

First, the Wrongful Death Act provides that only certain eligible claimants can recover from wrongful death settlement agreements. Here, because she had no spouse or children, only Amiliana's surviving "parents, grandparents, brothers, and sisters" are eligible to recover under the terms of the Proposed Settlement Agreement. *Id*. § 600.2922(3)(c). And Michigan Courts importantly extend this eligibility to half-siblings and step-siblings. *See Malik v. William Beaumont Hosp.*, 423 N.W.2d 920, 923 (Mich. Ct. App. 1988).

Second, the Wrongful Death Act requires "the court" with jurisdiction over the underlying claim to assess the proposed settlement agreement for equity and fairness at a hearing. MICH. COMP. LAWS § 600.2922(6)(d). But the Wrongful Death Act is largely silent on *how* courts should conduct this inquiry, and does not identify any factors which may be relevant to whether a proposed settlement agreement is fair. *See Est. of Ballard by Donnert v. Genesee Pediatric, PC, No. 344474*, 2019 WL 2360284, at *2 (Mich. Ct. App. June 4, 2019) ("Although MCL 600.2922 provides the proper procedure for a trial court to follow when distributing a settlement, it provides little guidance in deciding how to arrive at a distribution that is 'fair and equitable.'" (internal quotations omitted)). The Act notes only that eligible claimants may recover for their respective lost "society and companionship" with the deceased. *Id.* § 600.2922(6). But this direction is practically unhelpful in cases such as this, when the deceased lived a tragically short life and is survived by numerous eligible claimants. "There is, of course, no precise formula for determining damages for loss of a loved one's society and companionship." *Claim of Carr*, 471 N.W.2d 637, 640 (Mich. Ct. App. 1991).

So, in the face of competing "companionship" claims by numerous eligible claimants, Michigan courts take a totality-of-the-circumstances approach and have historically assessed the following five factors:

> (1) The living situation of each claimant, placing particular emphasis on whether any claimant lived or resided with the deceased;
> (2) The amount of time each claimant spent with the deceased;
> (3) The amount of care each claimant provided for the deceased;
> (4) The quality of personal relationships each claimant had with the deceased,
> (5) The amount of time or expenses each claimant contributed towards the deceased's burial or funeral, and whether each claimant attended the deceased's funeral

*See, e.g., Genesee Pediatric*, 2019 WL 2360284, at *3 (Mich. Ct. App. June 4, 2019) (finding photos of claimants with deceased were "isolated incidents of" the claimant's efforts to foster a relationship); *Carr*, 471 N.W.2d at 640 (finding a claimant had a "strained" relationship with the deceased because the claimant was incarcerated throughout the deceased's life); *Owen v. Twp. of Redford*, No. 14-13923, 2016 WL 3456922, at *4 (E.D. Mich. June 22, 2016); *Lewis v. Charter Twp. of Flint*, 767 F. App'x 591, 593 (6th Cir. 2019)

Yet claimants are "not to be compensated" for the "grief and mental anguish" they experience after the deceased's death, because "the idea" of the Wrongful Death Act "is to compensate survivors for the absence of those *positive* elements of the relationship that can no longer be enjoyed." *Porter ex rel. Estate of Smith v. Ne. Guidance Ctr., Inc.*, No. 213190, 2001 WL 1179672, at *6 (Mich. Ct. App. Oct. 5, 2001) (emphasis added). At bottom, because many of these factors may turn on the contradicted and unsubstantiated testimony of self-interested claimants, courts can properly consider claimant credibility. *Landin v. Healthsource Saginaw, Inc.*, 854 N.W.2d 152 (Mich. Ct. App. 2014); *Owen v. Twp. of Redford*, No. 14-13923, 2016 WL 3456922, at *4 (E.D. Mich. June 22, 2016).

### III.

Back to the motion at hand. In his October 2024 Motion to Approve, Personal Representative LeFevre identified the following *nine* claimants who are eligible—but not entitled—to recover under the terms of the Proposed Settlement Agreement:

    (1) John Drake, the deceased's maternal grandfather;
    (2) Debra Lewis, the deceased's maternal grandmother;
    (3) Alleigh Renshaw, the deceased's maternal half-sibling;
    (4) Kayleigh Renshaw, the deceased's maternal half-sibling;
    (5) Grayceigh Renshaw, the deceased's maternal half-sibling;
    (6) Rudolpho Sanchez, Sr., the deceased's paternal grandfather;
    (7) Rudy Sanchez, Jr., the deceased's paternal half-sibling;
    (8) Abrahm Sanchez, the deceased's paternal half-sibling; and
    (9) Alana Sanchez, the deceased's paternal half-sibling

*See* ECF No. 92.

On November 1, 2024, this Court (1) took the Motion for Settlement Approval under advisement, (2) scheduled a settlement approval hearing for December 11, 2024, and (3) directed Personal Representative LeFevre to notify all nine claimants of the Proposed Settlement Agreement, the scheduled hearing, and their opportunity to object. ECF No. 92.

Before the scheduled December 11, 2024 hearing, this Court received (1) a handwritten letter from John Drake, the father of Lyndsay Drake, challenging the terms of the Proposed Settlement Agreement,[1] and (2) an objection to the Proposed Settlement Agreement collectively filed by Rudy Sanchez, Jr., Abrahm Sanchez, and Alana Sanchez (collectively, the "Paternal Half-Siblings") who, unlike John Drake, retained counsel. *See* ECF No. 95. Neither document challenges the total Proposed Settlement amount or the proposed attorney's fees, costs, and expenses. But, read in tandem, both documents reveal tension between the maternal and paternal sides of Amiliana's family, both of which include claimants who aver they had the closest relationship to baby Amiliana before her tragic death. Without more, this Court could not meaningfully assess the equity and fairness of the Proposed Settlement Agreement on December 11, 2024, especially considering (1) the Court first received a copy of its confidential terms minutes before the scheduled one-hour hearing, and (2) the Proposed Settlement Agreement awards

---

[1] John Drake's letter does not appear on the docket but remains on file with this Court.

different amounts to different claimants, based on Personal Representative LeFevre's unexplained understanding of each claimants relationship to Amiliana.[2]

So, on December 11, 2024, the undersigned met with Personal Representative LeFevre, Plaintiff's Counsel, and the Paternal Half-Siblings' Counsel off-the-record to discuss next steps. After this meeting, this Court explained these next steps to all attending claimants[3] on the record. Additionally, this Court asked John Drake whether he planned on retaining counsel to support any objections, and he responded that he intended to do so by December 20, 2024.

## IV.

Accordingly, it is **ORDERED** that Personal Representative LeFevre is **DIRECTED** to file, **under seal, on or before January 3, 2025**, a memorandum explaining (1) the material terms of the Proposed Settlement Agreement and (2) his process for distributing the total settlement amount to each of the eight proposed recovering claimants, including a summary of the information he relied on when determining that some claimants were entitled to a larger proportion of the settlement than others, based on their respective relationships to Amiliana.

Further, it is **ORDERED** that all interested Parties who intend to object to the Proposed Settlement Agreement are **DIRECTED** to file written objections **on or before January 17, 2025.**

Further, it is **ORDERED** that the Settlement Approval Hearing is **ADJOURNED and rescheduled to occur on February 24, 2025, from 1:00–5:00 PM EST.** All proposed recovering

---

[2] The Proposed Settlement Agreement does not appear on the docket but remains on file with this Court.

[3] Eight of the nine initially identified claimants attended the December 11, 2024 hearing. The only initially identified claimant who did not attend the hearing was Rudolpho Sanchez, Sr. Notably, unlike all other initially identified claimants, Rudolpho Sanchez, Sr. is seemingly incarcerated and does not recover under the terms of the Proposed Settlement Agreement.

claimants—including those who file objections—are **DIRECTED TO ATTEND** this hearing, and should be prepared to testify or otherwise support their objection.

Further, it is **ORDERED** that Personal Representative LeFevre is **DIRECTED** to provide a copy of this Order to all claimants **on or before January 3, 2025.**

Dated: December 23, 2024             <u>s/Thomas L. Ludington</u>
                                     THOMAS L. LUDINGTON
                                     United States District Judge